Law Offices of
GEORGE C. BOISSEAU
SBN 75872
740 4th Street
Second Floor
Santa Rosa, California 95404
Phone: (707) 578-5636
Fax: (707) 578-1141
E-Mail: boisseaugc@msn.com

Attorney for Defendant
FAUSTO MONTES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR-19-0271-HSG |
| Plaintiff, | ) | DEFENDANT'S SENTENCING MEMORANDUM |
| v. | ) | |
| FAUSTO MONTES, | ) | |
| Defendant. | ) | Date: August 26, 2020 |
| | ) | Time: 1:30 p.m. |

The defendant, FAUSTO MONTES (MONTES), by and through his counsel of record, George C. Boisseau, hereby submits his Sentencing Memorandum.

I.

INTRODUCTION

The quality of mercy is not strain'd,
It droppeth as the gently rain from heaven
Upon the place beneath: it is twice bless'd;
It blesseth him that gives and him that takes:
'T is mightiest in the mightiest; it becomes
The throned monarch better than his crown;
His sceptre shows the force of temporal power,
The attribute to awe and majesty,
Wherein doth sit the dread and fear of kings;
But mercy is above this sceptred sway;
It is enthroned in the hearts of kings,It is an attribute to God himself;
And earthly power doth then show likest God's
            When mercy seasons justice.

Shakespeare, William, *The Merchant of Venice*, Act IV, Scene I.

MONTES is in serious need of mercy.  His life figuratively and quite literally is on

1

SENTENCING MEMORANDUM

the line.  He is in serious need of drug treatment, education and job training.  He can be an asset to the community and a great comfort for his family if out and working.  But he does not want to be a burden and an impediment to their continued survival during this time of pandemic.

MONTES, an unsophisticated man of limited education, sold methamphetamine to finance and enable his own drug habit.  He did not make much money in any of the transactions.  He was neither the source of the narcotics nor did he control the quality of the methamphetamine.   But he did negotiate methamphetamine sales with a confidential informant and for that he is extremely sorry.

MONTES is a man who, despite his obvious health concerns, will tirelessly work at the same time in three low paying jobs just to support his family.  He is devoted to his children and wife and has worked for his family through this COVID-19 pandemic.  As a restaurant worker, he is on the front line of essential workers.  But he is at risk–he is morbidly obese, suffers from diabetes, and wheezes noticeably after just walking a short distance from the elevator to the courtroom.  His health is noticeably compromised from everyday living and working.  There is no guarantee that he would survive a bout with COVID-19.

His family has no financial lifeline apart from him.  With no schools open, or daycare available, Ms. Lagunas stays at home with their daughter and six-month old son while MONTES goes from one job to another to earn enough for the bare necessities.

MONTES' high sentencing guidelines is being driven by the quality of the methamphetamine sold.  That base offense level is usually reserved for persons who are much more sophisticated and savvy in the drug world.  But virtually all methamphetamine sold these days is of high purity.  Because of that, purity is no longer a good indicator of criminal sophistication or relative culpability.  MONTES is on the lowest rung on the drug ladder–a user himself who meets an informant and knows a supplier and makes a few dollars putting them together.

On August 26, 2020, MONTES will enter an open plea of guilty to conspiring to distribute methamphetamine (Count One) and possessing, with intent to distribute, 5-grams or

2

SENTENCING MEMORANDUM

more of actual methamphetamine (Count Two and Three).  He will admit to selling 1,271 grams of methamphetamine to a confidential source on three occasions over two days for a total sum $6,600, with his take being only $250.  He was selling the methamphetamine to support his long-term abuse of cocaine and methamphetamine and made approximately $100 per pound for what he sold to the confidential informant.  Despite being only 25-years old at the time of the offense conduct, he had been abusing cocaine, and other drugs, for years.

There is no plea agreement in this case.  MONTES qualifies for "safety-valve" treatment, giving this Court options.  The United States Probation Department recommends a downward variance to 97-months.  However, custody may not be the best option for this relatively young man or society in general.  The $37,448 it costs to house him in the Bureau of Prisons can be put to better use such as paying for his counseling, treatment and education.  If punishment was the only goal of sentencing perhaps custody would be warranted.  But the goal of sentencing should be rehabilitation and this a prime example of taking the opportunity to use the resources of the government to make positive and long-lasting change in one man in need without just warehousing him for years.[1]

MONTES needs the life-skills programs offered by the conviction alternative programs available in this district.  He should be able to live up to his potential, impossible when he was addicted to cocaine but now possible with treatment and counseling.  He will be a work in progress for years but he should get started now.

These felony convictions will have a profound effect upon MONTES' life.  These first felony convictions which will negatively affect his ability to obtain employment, federal benefits and perhaps even affordable housing.  He faces a substantial prison term which will separate him from his family, affect their ability to sustain themselves, and may indeed put his life in danger from a potential fatal infection.  While he may obtain needed drug treatment in custody, and perhaps even be eligible for job training, the societal cost of prolonged

---

[1]   One New York study found that placing 150 felony offenders in a drug treatment program instead of incarceration saved the city system over $7 million in taxpayer money.

3

SENTENCING MEMORANDUM

1  incarceration, in housing cost and effect upon his extended family, far exceed the benefits

2  from imposing a lengthy jail sentence.

3       There is, however, a better alternative.  Jail alternatives such as the CAP Program

4  offer drug treatment, counseling and behavioral modifications through teaching life skills, are

5  cheaper and do not detract from the goals of promoting respect for the law, affording adequate

6  deterrence, and protecting the public from further crimes of this defendant.

7       The point has been made to MONTES–his past behavior is wrong and will be

8  severely punished if it continues.  The consequences of his bad conduct have been felt and will

9  continue through MONTES' lifetime.  Now is the time to season justice with mercy–to show

10  that all lives matter and that redemption is not just a hollow phrase.  MONTES requests an

11  opportunity to redeem himself and to show that he is worthy of a second chance.  He does this

12  for himself but mostly his family who need him at this critical time.

13  OBJECTIONS TO PRE-SENTENCE REPORT

14       The defense does not object to the Pre-Sentence Report's calculation of MONTES'

15  offense level or criminal history.  However, MONTES requests a "variance" from the offense

16  level calculation based on the fact that the methamphetamine guidelines overstate the extent of

17  his culpability.

18       Sentencing judges may impose sentences that vary from the Guidelines range based

19  on a policy disagreement with the Guidelines. *See, e.g., Spears v. United States,* 555 U.S. 261,

20  263–67 (2009) (*per curiam* ); *Kimbrough v. United States,* 552 U.S. 85, 109–10 (2007). The

21  Supreme Court held in *Kimbrough* that the Anti–Drug Abuse Act of 1986 "does not require ...

22  sentencing courts ... to adhere to the 100–to–1 ratio for crack cocaine quantitates other than

23  those that trigger the statutory mandatory minimum sentences." In discussing grounds for a

24  variance from the Guidelines "[i]n *Kimbrough,* the Supreme Court held that it was not an

25  abuse of discretion for a district court to vary from the Guidelines based on its policy

26

27

28

4

SENTENCING MEMORANDUM

1    disagreement concerning the disparity between crack and powder cocaine sentences." *United*
2    *States v. Battiest,* 553 F.3d 1132, 1137 (8th Cir.2009) (citing *Kimbrough,* 552 U.S. at
3    110–111). Thus, "policy disagreements" may provide the basis for a variance from a
4    Guidelines sentence, even in a "mine-run" case. *Kimbrough,* 552 U.S. at 109–110. [2]

5          The implication of *Spears* is that, in other 'mine-run' situations, the sentencing court
6    may also reject Guidelines provisions on categorical, policy grounds—particularly when those
7    Guidelines provisions "do not exemplify the Commission's exercise of its characteristic
8    institutional role," *id.* (quoting *Kimbrough,* 552 U.S. at 89)—and may, consequently, adopt
9    some other well-reasoned basis for sentencing. A number of federal courts of appeals have
10   held that *Kimbrough* and *Spears* apply to policy disagreements with Guidelines other than
11   those applicable to crack cocaine.  *See, e.g., United States v. Henderson,* 649 F.3d 955, 963
12   (9th Cir.2011) (holding "district courts may vary from the child pornography Guidelines, §
13   2G2.2, based on a policy disagreement with them, and not simply based on an individualized
14   determination that they yield an excessive sentence in a particular case."); *United States v.*
15   *Grober,* 624 F.3d 592, 599–600 (3rd Cir.2010) (holding that while sentencing court has
16   authority to vary from advisory Guidelines range based on its policy disagreement, when it
17   does so it must provide "a reasoned, coherent, and sufficiently compelling explanation of the
18   basis for [its] disagreement.") (quoting *United States v. Merced,* 603 F.3d 203, 220 (3d
19   Cir.2010) (internal quotation marks omitted); *United States v. Corner,* 598 F.3d 411, 415 (7th
20   Cir.2010) (*en banc* ) ("We understand *Kimbrough* and *Spears* to mean that district judges are
21   at liberty to reject any Guidelines on policy grounds—though they must act reasonably when
22   using that power."); *United States v. Cavera,* 550 F.3d 180, 191 (2d Cir.2008) (*en banc*) ("As
23   the Supreme Court strongly suggested in *Kimbrough,* a district court may vary from the

24

25   [2]    The Supreme Court clarified the issue of the district court's authority to vary from
26   Guidelines sentences in *Spears,* which also involved the disparity between crack and powder
     cocaine sentences. In *Spears,* the Court explained that "a guideline may be rejected on
27   categorical, policy grounds, even in a mine-run case, and not simply based on an individualized
     determination that it yields an excessive sentence in a particular case." *United States v.*
28   *Beiermann,* 599 F.Supp.2d 1087 (N.D.Iowa 2009) (citing *Spears,* 555 U.S. at 262).

5

SENTENCING MEMORANDUM

Guidelines range based solely on a policy disagreement with the Guidelines, even where that disagreement applies to a wide class of offenders or offenses."); *United States v. Rodriguez,* 527 F.3d 221, 227 (1st Cir.2008) ("[*Kimbrough* ] makes plain that a sentencing court can deviate from the Guidelines based on general policy considerations.").[3]

Judge Bataillon of the District of Nebraska has recognized the flaws in the methamphetamine Guidelines in a series of opinions. *See, e.g., United States v. Goodman,* 556 F.Supp.2d 1002, 1016 (D.Neb.2008) (varying downward in a conspiracy to manufacture methamphetamine case and holding that "[a] variance is appropriate in view of the fact that the Guidelines at issue were developed pursuant to statutory directive and not based on empirical evidence."). In *United States v. Hubel,* 625 F.Supp.2d 845, 853 (2008), Judge Bataillon analyzed the flawed creation of the methamphetamine Guidelines:

> For policy reasons, and to conform to statutory mandatory minimum sentences, the Commission did not employ its characteristic empirical approach when setting the Guidelines ranges for drug offenses. *Kimbrough,* 552 U.S. at 96, 128 S.Ct. at 567; Fifteen–Year Assessment at 15, 72–73. Instead, the Commission attempted "to accommodate and, to the extent possible, rationalize mandatory minimum provisions established by the 1986 Anti–Drug Abuse Act" by anchoring the Guidelines to the mandatory minimum sentences. United States Sentencing Commission, Special Report to Congress: Mandatory Minimum Penalties in the Federal Criminal Justice System (August 1991), accessed at *www.ussc. gov/reports.htm* (hereinafter, "Mand.Min.Rep't"), Summary at ii; Rep't at 17 n.58. The Commission thus adopted "the 1986 [Anti–Drug–Abuse] Act's weight-driven scheme."

---

[3]    No other drug is punished *more* severely based on purity." Amy Baron–Evans, Deconstructing the Meth Guidelines, Presentation for the Sentencing Resource Counsel, Federal Public and Community Defenders, at 12, available at txn.fd.org/Meth.pps. The Commission assumed that offenses involving actual methamphetamine are more severe than offenses involving mixtures of methamphetamine. The Commission reasoned: "Since controlled substances are often diluted and combined with other substances as they pass down the chain of distribution, the fact that a defendant is in possession of unusually pure narcotics may indicate a prominent role in the criminal enterprise and proximity to the source of the drugs." U.S.S.G. § 2D1.1., cmt. n.26(c). While it may seem logical to punish a pure substance more than mixed substance, there is no support in the legislative history to explain the formula underlying greater methamphetamine purity to greater months of imprisonment. *See* Amy Baron–Evans, Deconstructing the Meth Guidelines, Presentation for the Sentencing Resource Counsel, Federal Public and Community Defenders, at 12, available at txn.fd.org/Meth.pps.

6

SENTENCING MEMORANDUM

*Goodman* at 1016; see also *Kimbrough,* 552 U.S. at 96; *see Chapman v. U.S.,* 500 U.S. 453, 461 (1991) (stating that the Anti–Drug Abuse Act of 1986 provided for mandatory minimum sentences based on the weight of various controlled substances according to a "market-oriented" approach, creating a penalty scheme intended to punish large-volume drug traffickers severely). In support of his under-the-guidelines sentence, Judge Bataillon further discussed the problems with the methamphetamine Guidelines' approach:

> The court has considered the Sentencing Guidelines, but, because they were promulgated pursuant to Congressional directive rather than by application of the Sentencing Commission's unique area of expertise, the court affords them less deference than it would to empirically-grounded Guidelines. *See Kimbrough,* 552 U.S. at 107–10, 128 S.Ct. at 574–75. The Guidelines' quantity-driven, "market-oriented" approach is not a proxy for culpability in every case, nor does it always correlate to the purposes of sentencing under 18 U.S.C. § 3553(a). Drug quantity is only an accurate measure when it corresponds to a defendant's position in the typical hierarchy that characterizes most drug conspiracies. Where the defendant falls in this hierarchy is an important factor in the court's assessment of a defendant's ultimate culpability.

*Goodman* at 1017. Other courts have held that a district court judge may disagree with the methamphetamine Guidelines on policy grounds. *See, e.g., United States v. Valdez,* 268 Fed.Appx. 293 (5th Cir.2008) (affirming an upward variance based on purity of crystal methamphetamine and holding that "the district court judge can disagree with the Guidelines' policy that purity is indicative of role or that purity is adequately provided for in [defendant's] base level."); *United States v. Santillanes,* 274 Fed.Appx. 718, 718–19 (10th Cir.2008) (remanding for sentencing after prosecution conceded that it was error for the district court to conclude it did not have the power to accept defendant's argument based on a policy disagreement with the methamphetamine Guidelines).[4]

---

[4]     Beyond methamphetamine, other courts have disagreed with the drug-trafficking Guidelines on the same grounds with different types of drugs. *See, e.g., United States v. Ysidro Diaz,* No. 11–CR–00821–2 (JG), 2013 WL 322243 (E.D.N.Y. Jan. 28, 2013) (expressing a policy disagreement with the Guidelines for heroin, cocaine, and crack offenses); *United States v. Cabrera,* 567 F.Supp.2d 271 (D.Mass.2008) (varying downward and rejecting the cocaine guideline on the basis of "the over-emphasis on quantity and the under-emphasis on role in the offense"). In *Diaz,* Judge Gleeson critiqued the drug-trafficking guidelines, providing a comprehensive policy disagreement with the Guidelines for heroin, cocaine, and crack offenses that also applies to methamphetamine offenses. *Diaz,* 2013 WL 322243.

SENTENCING MEMORANDUM

As stated by Chief Judge B. Lynn Winmill of the United States District Court for the District of Idaho that "[d]ue to increases in the average purity of methamphetamine sold today, purity is no longer an accurate indicator of a defendant's culpability or role in a drug enterprise." *United States v. Hartle*, No. 4:16-cv-00233-BLW, 2017 WL 2608221 at *1 (D. Idaho June 15, 2017); *see also id.* at *2 (noting increases in purity levels of methamphetamine over time in the District of Idaho and nationwide); *Ibarra-Sandoval*, 265 F.Supp.3d 1249, 1255 (D.New Mexico 2017). (The Commission's assumption regarding the connection between methamphetamine purity and criminal role is divorced from reality.)   As *Nawanna* observed, because of the generally very high purity of methamphetamine available today at all levels of the distribution chain, virtually all defendants today face enhanced punishment for a factor present in virtually all methamphetamine cases, not enhanced punishment based on individualized determinations, making the Guidelines purity enhancement excessive.  *United States v. Nawanna*, 321 F. Supp. 3d 943, 954–55 (N.D. Iowa 2018); cf. *United States v. Hayes*, 948 F.Supp.2d 1009, 1027-29 (N.D.Iowa 2013).  Moreover, because the purity-based methamphetamine Guidelines improperly punish virtually all defendants for their *assumed* role in the offense.

Applied to this case, although the quantity-based system was designed to punish bigger distributors more harshly, charging practices and the government's control over the number and amount of controlled buys from undercover or cooperating agents results in an erroneous impression that a small-quantity distributor is actually a    large-quantity distributor.[5]

---

[5]    Swayed by policy reasons and pressure to conform to statutory minimums, the Commission did not use this empirical approach in developing the Guidelines ranges for drug-trafficking offenses. *Kimbrough,* 552 U.S. at 96; *Hubel,* 625 F.Supp.2d at 849; *Diaz,* 2013 WL 322243, at *4 (explaining that "empirical data on drug trafficking offenses were gathered, but they had *no* role in the formulation of the Guidelines ranges for drug trafficking offenses"). After Len Bias, the star University of Maryland basketball player, died of a drug overdose, on June 19, 1986, Congress swiftly enacted the Anti–Drug Abuse Act of 1986 ("ADAA" or "1986 Act"). *See Diaz,* 2013 WL 322243, at *4. The ADAA established a two-tiered system with five and ten-year mandatory minimum sentences for drug offenses, and the "Commission drafted new guidelines to accommodate these mandatory minimum provisions by anchoring the guidelines to them." Report to Congress: Mandatory Minimum Penalties in the Federal Criminal Justice System at ii
(continued...)

SENTENCING MEMORANDUM

MONTES is indeed a small-quantity, not very sophisticated, distributor caught up in a sentencing scheme designed to punish large and sophisticated traffickers. *See United States v. Woody,* 2010 WL 2884918, *10 (D.Neb. July 20, 2010) (affording less deference to the methamphetamine Guidelines range since it was "promulgated pursuant to Congressional directive rather than by application of the Sentencing Commission's unique area of expertise" and varying downward where quantity does not accurately reflect culpability); *United States v. Ortega,* 2010 WL 1994870 (D.Neb. May 17, 2010) (recognizing the "guidelines for methamphetamine crimes were anchored to mandatory minimum sentences, not based on empirical study" and finding an outside-the-guidelines sentence necessary to reflect defendant's minor role in a methamphetamine conspiracy and to avoid unwarranted sentencing disparity); *United States v. Nincehelser,* 2009 WL 872441 (D.Neb. Mar. 30, 2009) (sentencing below the Guidelines because the "the drug offense Guidelines were promulgated pursuant to Congressional directive rather than by application of the Sentencing Commission's unique area of expertise" and concluding that the quantity-based approach is "not always a trustworthy measure of the culpability of an individual defendant"); *United States v. Castellanos,* 2008 WL 5423858 (D.Neb. December 29, 2008) (granting defendant's motion for downward departure and concluding that the methamphetamine Guidelines should be afforded

---

[5](...continued)
(2011), available at
http://www.ussc.gov/Legislative_and_Public_Affairs/Congressional_Testimony_and_
Reports/Mandatory_Minimum_Penalties/20111031_RtC_PDF/Executive_Summary.pdf
[hereinafter Mandatory Minimum Report]. Even though the mandatory minimum sentences for drug-trafficking offenses in the Anti–Drug Abuse Act of 1986 ("ADAA" or "1986 Act") were much higher than the pre-guidelines sentences for the same offense, the Commission incorporated the mandatory minimum provisions of the ADAA into the Guidelines, which are based on drug type and quantity. "It jettisoned its data entirely and made the quantity-based sentences in the ADAA proportionally applicable to every drug trafficking offense." *Diaz,* 2013 WL 322243, at *6. The ADAA's "weight-driven scheme" relies on "a drug quantity table based on drug type and weight to set base offense levels for drug-trafficking offenses." Mandatory Minimum Report; *see U.S.S.G.* § 2D 1.1(c). "The resulting Guidelines ranges for drug trafficking offenses are driven by the quantity of drugs, and keyed to statutory mandatory minimum sentences based on weight." *Woody,* 2010 WL 2884918 at *5 (citing *Gall,* 128 S.Ct. at 594 n. 2; *Neal v. United States,* 516 U.S. 284, 291–92 (1996)).

9

SENTENCING MEMORANDUM

1    less deference since they are not empirically-grounded); *United States v. Rocha,* 2008 WL

2    2949242 (D.Neb.2008) (finding that the methamphetamine Guidelines are not empirically-

3    grounded and granting defendant's downward variance in a conspiracy to distribute and

4    possess with intent to distribute methamphetamine mixture case); *United States v.*

5    *McCormick,* 2008 WL 268441, at *10 (D.Neb. Jan. 29, 2008) (varying downward after finding

6    that "[t]he Guidelines ranges of imprisonment for possession of precursor chemicals were, like

7    the drug-trafficking Guidelines, determined with reference to statutory directives and not

8    grounded in empirical data").[6]

9            The methamphetamine offense Guidelines are excessive because they subject all

10   defendants to harsh treatment, regardless of their role in the offense. "The Commission's

11   lineage of the Guidelines ranges for drug trafficking offenses to the ADAA's weight-driven

12   regime has resulted in a significantly more punitive sentencing grid than Congress intended in

13   passing the ADAA." *Diaz,* 2013 WL 322243, at *6.  According to studies, this problem of the

14   current drug trafficking regime, "in which offenders of widely differing culpability receive

15   unreasonably similar sentences," has been called "excessive uniformity." Eric L. Sevigny,

16   Excessive Uniformity in Federal Drug Sentencing, 25 J. Quant. Criminol.. 155, 156 (2009).

17   "Excessive uniformity in drug sentencing has its genesis in guideline-based rules of

18   sentencing, including an overemphasis on drug quantity, the 'relevant conduct' standard, and

19   the narrow scope and applicability of culpability-based sentencing adjustments." *Id.* The

20   original Commission focused on quantity since "the amount of drugs was more easily

21   quantifiable than role in the offense and, it was thought, quantity would serve as a good proxy

22   for role." *Id.* "[D]rug quantity is sometimes a plausible surrogate for an offender's

23   dangerousness, culpability or level of organizational responsibility. At best it is a crude

24

25   [6]    The methamphetamine Guidelines have evolved through a series of amendments over the
     years, and the penalties for methamphetamine offenses have increased dramatically. The initial
26   sentencing Guidelines, following the mandatory minimum quantity thresholds established in the
     ADAA "did not list methamphetamine in the drug table because they were not subject to the
27   1986 Act. U.S. Sentencing Comm'n, Methamphetamine: Final Report of the Working Group 7
     (1999), *available at*
28   http://www.ussc.gov/Research/Working_Group_Reports/Drugs/199911_Meth_Report. pdf
     [hereinafter Methamphetamine Report].

10

SENTENCING MEMORANDUM

surrogate." Stephen J. Schulhofer, *Assessing the Federal Sentencing Process: The Problem is Uniformity, Not Disparity,* 29 Am. Crim. L. Rev. 833, 851–73 (1992). Changes in the drug trade have resulted in larger drug quantities, making the large quantity indicator of responsibility ineffective. *Id.*

MONTES was a small-time drug dealer making only that money necessary to support his drug addiction.  He was not the source of methamphetamine, did not control its quality, and made only approximately $100 for being the intermediary between the source of methamphetamine and the confidential informant who, on behalf of the agents involved, set the amounts to be distributed.  Although perhaps not a minor participant in the dealings, his role was not of a major dealer.  He was no more than a small cog in a distribution system he had no knowledge of and had no control over.  Yet, the sentencing guidelines sets his culpability at the same level as the source of the methamphetamine or other more highly placed traffickers.

Based on this, MONTES respectfully requests that this Court vary from the guidelines range and impose a sentence more in tune with MONTES' actual culpability.  He was a user of narcotics who trafficked methamphetamine to support his addiction.  He made very little money doing so and is not a sophisticated or knowledgeable drug dealer.

III.

<u>THE PRESENT AND FUTURE AND CONSIDERATION OF SENTENCING ALTERNATIVES.</u>

CAP offers MONTES a structured program to deal with his addiction.  While he has made progress these past few months, MONTES needs continued structure to insure that he develop the necessary skills to deal with this life-time illness.  He has demonstrated a willingness to change his life and his commitment to that goal would make him an excellent candidate for CAP.

MONTES is requesting this opportunity to change his life.  The alternative would seriously erode the progress he has already made, a setback for him and the community at large.  MONTES has been addicted to cocaine, methamphetamine and alcohol for many years.

11

SENTENCING MEMORANDUM

His addiction has affected all phases of his life–family and interpersonal relationships, employment and education.

MONTES is truly remorseful for his conduct.   Further, he wishes to participate in all treatment, vocational, educational and counseling programs available. He has a well-documented substance abuse problem which contributed to the instant offense conduct.

Further, MONTES has fully admitted his conduct to this Court and to the authorities in a "safety valve" debriefing.  He wants to participate in treatment and counseling programs to ensure that he fulfill his desire to be a productive member of the community.

MONTES has had much time to examine what his drug addiction has done to him. He never wants to become involved in this criminal activity again and wants to do what he can do to never place himself where he repeats it.  He realizes he must continue to address his substance abuse problem which has contributed to every one of his criminal offenses.  He realizes that his addiction not only placed him in this position, but that will hamper him in the future in both his professional and personal life unless he continues to receive long-term drug treatment counseling.

Not only has his conduct greatly disappointed his family, but it is certainly not the example he wishes for young son.  MONTES believes he must turn away from drugs and continue to act responsibly to regain the respect of all his family.  First, he has accepted full responsibility for his conduct.  He must now repay his family for the love and support they have shown him throughout these difficult months.  And he can only do this by changing his life-style.  He now has a family to support and care for--he knows that he cannot continue to act irresponsibility.

MONTES needs a structured program to deal with his addiction.  While he has made progress this last year, he needs continued structure to insure that he develop the necessary skills to deal with this life-time illness.  He has already demonstrated a willingness to change his life and his commitment to that goal would make him an excellent candidate for sentencing alternatives.

12

SENTENCING MEMORANDUM

1        MONTES  is requesting this opportunity to change his life.  Custody may indeed

2   seriously erode the progress he has already made, a setback for him and the community at

3   large.

4                                 IV.

5                  RISK OF HEALTH–COVID-19

6        MONTES is obese, has diabetes, and is probably suffering from a respiratory

7   disorder such as asthma.  His health is thus compromised and he has no access to adequate

8   health care.  He is at high risk of serious of developing serious health problems, even death, if

9   he contracts COVID-19.  Incarceration makes him susceptible to the contagion.

10                                 V.

11   THIS COURT SHOULD EITHER DEFER SENTENCING OR IMPOSE
AN AVAILABLE CONVICTION ALTERNATIVE PROGRAM
12   BECAUSE IT IS  A REASONABLE SENTENCE CONSIDERING THE
FACTORS SET OUT IN 18 U.S.C. §3553(A).
13

14       A deferred sentence or conviction alternative sentence would serve the dual purpose

15   of punishment and rehabilitation.  It will give him an opportunity to participate in drug

16   treatment, educational, and counseling programs within in this district.

17        Sentencing courts must give "meaningful consideration" to all of the statutory factors

18   in 18 U.S.C. §3553(a).

19            (1) the nature and circumstances of the offense and the history and
characteristics of the defendant; (2) the need for the sentence imposed–(A)
20            to reflect the seriousness of the offense, to promote respect for the law, and
to provide just punishment for the offense; (B) to afford adequate deterrence
21            to criminal conduct; (C) to protect the public from further crimes of the
defendant; and (D) to provide the defendant with needed educational or
22            vocational training, medical care, or other correctional treatment in the most
effective manner;
23            (3) the kinds of sentences available; (4) the kinds of sentence and the
sentencing range established for–(A) the applicable category of offense
24            committed by the applicable category of the defendant as set forth in the
guidelines...; (5) any pertinent policy statement...issued by the Sentencing
25            Commission...that is in effect on the date the defendant is sentenced.; (6) the
need to avoid unwarranted sentence disparities among defendants with
26            similar records who have been found guilty of similar conduct; and (7) the
need to provide restitution to any victims of the offense.
27

28   (18 U.S.C. §3553).  Section 3553(a) clearly states that a court must impose a sentence that is

13

SENTENCING MEMORANDUM

"sufficient but not greater than necessary to comply with the purposes of sentencing.  This requirement is often referred to as 'the parsimony provision," and the Supreme Court has referred to it as the "overarching instruction" of 18 U.S.C. §3553(a).  See *Kimbrough v. United States,* 552 U.S. 85 (2007).  Although the offender's conduct is part of the sentencing equation, it is not the totality of it, and the sentencing court must not focus on the offense at the expense of the individual offender.  *United States v. Booker*, 543 U.S. 220 (2005) and *United States v. Ameline*, 409 F.3d 1073 (9th Cir.2005)(*en banc*).   The sentence must be long enough to reflect the seriousness of the offense, provide for just punishment and promote respect for the law.  Further, it should afford adequate deterrence to criminal conduct in general and protect the public.  It must be "sufficient but not greater than necessary" to reflect societal concerns and individual considerations.

A sentencing alternative will reflect the seriousness of the offense, provide for just punishment and promote respect for the law.  It affords adequate deterrence to criminal conduct in general and protects the public.

MONTES has admitted his responsibility relatively early in these proceedings.  He has matured during this year and has had much time to reflect upon his past and future.  He is a man who has family support behind him.   This sentence will adequately punish him for his conduct and at the same time give him the opportunity and  resources to become a productive member of society.  By doing this, he will be able to develop the tools to deal with his drug addiction.

VI.

## ALTERNATIVELY, THE DEFENSE RECOMMENDS A REFERRAL TO A FEDERAL PRISON CAMP AND INTENSIVE CONFINEMENT PROGRAM.

Should this Court disagree with the defense and believe that some custody is warranted, the defense respectfully requests that this Court consider MONTES for the Shock Incarceration Program (U.S.S.G. §5F1.7) offered by the Bureau of Prisons.  MONTES would benefit greatly from this program.

Pursuant to 18 U.S.C. §4046,

14

SENTENCING MEMORANDUM

(a)  The Bureau of Prisons may place in a shock incarceration program any person who is sentenced to a term of imprisonment of more than 12, but not more than 30, months, if such person consents to that placement.

(b)  For such initial portion of the term of imprisonment as the Bureau of Prisons may determine, not to exceed 6 months, an inmate in the shock incarceration program shall be required to–

(1)   adhere to a highly regimented schedule that provides the strict discipline, physical training, hard labor, drill, and ceremony characteristic of military basic training; and

(2)   participate in appropriate job training and educational programs (including literacy programs) and drug, alcohol, and other counseling programs.

(c)  An inmate who in the judgment of the Director of the Bureau of Prisons has successfully completed the required period of shock incarceration shall remain in the custody of the Bureau of Prisons for such period (not to exceed the remainder of the prison term otherwise required by law to be served by that inmate), and under such conditions, as the Bureau deems appropriate.

18 U.S.C. §4046.  MONTES is an ideal candidate for the Shock Incarceration Program.  He is not a violent offender and he does not have any prior criminal history except for a misdemeanor drug possession conviction.   MONTES would greatly benefit by the strict discipline and highly regimented schedule which is a large part of the program.

Section 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; (4) the kinds of sentences and the sentencing range established by the Sentencing Guidelines; (5) pertinent policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentencing disparities among defendants who have similar criminal record and have been found guilty of similar conduct; and (7) the need to provide restitution to victims.  18 U.S.C. §3553(a).  A sentence of no more than 30-months is long enough to reflect the seriousness of the offense, provides for just punishment and promotes respect for the law.  Further, it affords adequate deterrence to criminal conduct in general and protects the public.   Importantly, the sentence provides MONTES with needed discipline, structure, vocational training and substance abuse treatment.  18 U.S.C. §3553(a).

15

SENTENCING MEMORANDUM

VII.

RECOMMENDATION TO A FEDERAL FACILITY IN CALIFORNIA
AND INTENSIVE DRUG-TREATMENT PROGRAM.

Another option is participation in the one-year intensive drug treatment program (RDAP) offered by the United States Bureau of Prisons.  MONTES has a documented drug abuse problem and is otherwise eligible for the program.  He has no history of serious violent or assaultive conduct and he is a United States citizen.

MONTES also wishes to the placed in a federal facility close to his family.  He wishes to be placed in a facility in California.

CONCLUSION

For the foregoing reasons, MONTES respectfully requests that this Court place him in either the Conviction Alternatives Program (CAP), the Post-Plea Division Program or the Diversion/Deferred Sentencing Court.  Such a  sentence is reasonable within the meaning of *Gall v. United States*, 552 U.S. 38 (2007) and consistent with the factors set out in 18 U.S.C. §3553(a).  MONTES would benefit greatly from the counseling, rehabilitation and treatment programs offered by these programs.  He is both deserving and willing to accept the life changing opportunities available.  This is a man at the cross-roads of his life–the path he is choosing will allow him to be fully engaged in the community and be a productive member of the society.  He is determined to place this unfortunate chapter of his life behind him but at the same time make it a positive experience by learning new life skills and a better way of living. He has the family support to help him in this regard.  The positives he has in his life should enable him to be successful in all available programs.

Dated: August 19, 2020

Respectfully submitted,

_/s/_____
GEORGE C. BOISSEAU

Attorney for Defendant
FAUSTO MONTES

16

SENTENCING MEMORANDUM

1

<u>CERTIFICATE OF SERVICE</u>

2

The undersigned hereby certifies that a copy of the foregoing <u>SENTENCING</u>

3

<u>MEMORANDUM</u> was served this date to the following parties and attorneys for parties by e-

4

filing a copy to:

5

Sailaja Paidipaty
Assistant U.S. Attorney

6

United States Attorney's Office
Northern District of California

7

11ᵗʰ Floor Federal Building
450 Golden Gate Avenue

8

San Francisco, California 94102
Fax: (415) 436-7234

9

I caused the following additional parties to be personally served by e-filing a  copy

10

to:

11

Cindy Suntay
United States Probation Officer

12

United States Probation Department
17ᵗʰ Floor Federal Building

13

450 Golden Gate Avenue
San Francisco, California 94102

14

Fax: (415) 436-7572

15

I certify under penalty of perjury that the foregoing is true and correct.

16

Executed this 19th August, 2020, in Santa Rosa, California.

17

18

_____
/s/
GEORGE C. BOISSEAU

19

20

21

22

23

24

25

26

27

28

17

SENTENCING MEMORANDUM